# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA.

## GREAT NORTHERN RAILWAY COMPANY v. CITY OF MINNEAPOLIS.[1]

February 2, 1917.

Nos. 20,021—(160).

**Eminent domain — omission of owner's name — due process of law — action to enjoin defendant.**

In proceedings to condemn private property for the purpose of widening a street under G. S. 1913, §§ 1566—1572, the plat and survey filed showed the character, course and extent of the improvement, and the property to be taken or interfered with. In giving the name of the owner of each parcel "so far as the engineer can readily ascertain the same," as required by the statute, the plat named "H. K. Feye" as the owner of a tract a part of which was proposed to be taken. Plaintiff was the owner of record of a four-fifths interest in this tract, but it was not named as such owner on the plat or in the published notices given, nor was any award of damages made to it for the land so taken, the award made and confirmed being to Feye. In this action to enjoin defendant from taking possession of and erecting structures for street purposes on the strip taken, it is *held*:

(1) The provisions of the statute as to notice to the owners of property proposed to be taken or interfered with were complied with. The omission to name plaintiff on the plat or in the notices as the

[1]Reported in 161 N. W. 231.

owner of the tract in question was not a fatal departure from the requirement that the names of owners be stated "so far as they can readily be ascertained." Knoblauch v. City of Minneapolis, 56 Minn. 321, followed and applied.

(2) The provisions of the statute as to notice to the owners of property proposed to be taken or interfered with constitute due process of law. It is not necessary that the statute require the names of owners to be stated on the plat or in the notices. The fact that no compensation in excess of benefits to land not taken was awarded for the property of plaintiff taken in the proceedings is not sufficient to show there was not due process of law in that plaintiff was deprived of its property without just compensation, or that there was a violation of the constitutional provision that private property shall not be taken for public use without just compensation.

(3) The record in the condemnation proceedings sufficiently shows that plaintiff's interest in the strip was condemned, as well as the interest of Feye.

Action in the district court for Hennepin county to restrain defendant from interfering with plaintiff's property in the matter of widening Seventh street north in defendant city. The answer set up the proceedings taken by the city in proceedings to condemn the land in question. Plaintiff obtained an order requiring defendant to show cause why a temporary restraining order should not issue. From an order denying its motion for a temporary injunction, Hale, J., plaintiff appealed. Affirmed.

*M. L. Countryman* and *Cobb, Wheelwright & Dille,* for appellant.
*C. D. Gould* and *R. S. Wiggin,* for respondent.

Holt, J.

This action was brought to enjoin defendant city of Minneapolis from taking possession of and erecting structures for street purposes upon a strip of land 1,100 feet long and 20 feet wide. The case comes to this court on plaintiff's appeal from an order denying a motion for a temporary injunction.

The facts as they appear from the pleadings and the moving papers may be stated as follows: Prior to October 10, 1910, one H. K. Feye was the owner of a tract of land lying between Sixth street north and Seventh street north and between Hoag avenue and Fifth avenue north

if extended across Sixth and Seventh streets. The tract was approximately 1,100 feet in length along Sixth and Seventh streets, and one block in width. October 10, 1910, Feye conveyed to plaintiff an undivided four-fifths interest in this tract. This deed was recorded October 21, 1910. Feye still owns an undivided one-fifth interest in the tract, and since the conveyance plaintiff has been the owner of an undivided four-fifths. Plaintiff has been at all times in actual possession of the tract, using it as a railroad yard, with numerous tracks thereon.

In October, 1913, the city instituted proceedings to acquire land by condemnation for the purpose of widening and opening Seventh street north from Hennepin avenue to Plymouth avenue. The resolution of the common council did not designate the lands proposed to be taken by lots or blocks, but described them in general terms, and, as required by law, directed the city engineer to make and present to the council a plat and survey showing the character, course and extent of the improvement, the property necessary to be taken and the names of the owners of each parcel, so far as the city engineer can readily ascertain the same. This plat and survey was presented to the council in November, 1913, and a resolution passed adopting it and directing it to be filed with the city clerk. It was so filed, and made the basis of all the subsequent proceedings, which resulted in the condemnation of the 20-foot strip of the tract here in controversy which lies adjacent to Seventh street north. In 1915, the city commenced the actual work of widening the street, and in March, 1916, commenced the construction of a retaining wall on the strip. This construction was in progress when this action was begun in April, 1916.

Plaintiff's claim that by the condemnation proceedings the city acquired no title or right to the strip in question is based upon the fact that the plat and survey gave the name of "H. J. Feye" as the owner of the tract, and did not mention the name of plaintiff in that connection, though it was the owner of record of a four-fifths interest therein. This is true, as it is also that the name of plaintiff was not mentioned in the award of damages and benefits. But the strip proposed to be taken was clearly shown on the plat filed, and an inspection of this plat by plaintiff could leave no doubt that its property was proposed to be taken for the improvement. Plaintiff was named on the plat as the owner of the

tract adjoining the property designated as owned by Feye, a portion of which tract was being taken in the proceedings.

1. The first question is whether the provisions of the law as to notice to the owners of property proposed to be taken were complied with in the proceedings here.

The proceedings were under the so-called Elwell Law (G. S. 1913, §§ 1566-1572). The provisions of this law as to notice to the owners of property proposed to be taken or affected are in substance as follows: The plat and survey of the engineer is required to show the character, course and extent of the proposed improvement, the property necessary to be taken or interfered with thereby, the amount of land taken from each owner, "with the name of the owner of each parcel of such property *so far as the engineer can readily ascertain the same.*" The council then appoints four freeholders as commissioners to view the premises, ascertain and assess the damages and benefits. The commissioners are required to give notice by two publications in the official paper that the plat and survey is on file for the examination of all persons interested, and that they will, on a day designated in the notice, meet at a place designated, view the property, ascertain and assess damages for the property taken or interfered with, and assess benefits, then and there hearing interested parties. After the report of the commisioners is filed with the city clerk, he is required to give notice by one publication in the official paper that he will present the report to the council at its next meeting, or as soon thereafter as practicable, for consideration and action. This notice must be published at least 10 days before its presentation to the council, and must contain descriptions of the different parcels taken, with the amount of damages awarded, and the names of the owner or owners of each lot or parcel, "as nearly as the same can be readily ascertained."

The foregoing are the only provisions as to notice to property owners either of the meeting of the commissioners or of the council's meeting to consider their report. The act does not require personal notice, or notice by mail. It does not require that the owners of property to be taken or interfered with be stated in the plat or in the notices when such names cannot be "readily ascertained." The proceedings were in strict accord with the law, save possibly in the failure to name plaintiff either on the

plat or in the published notices as the owner of the tract from which the strip was taken. Was this such a failure to comply with the statutory provisions requiring the names of the owners of property to be taken or interfered with "so far as they can be readily ascertained" to be stated on the plat and in the various notices, as renders the proceedings void as to plaintiff? The general rule is that the provisions of the statute as to notice to interested parties in proceedings to condemn private property for public use must be strictly complied with. A failure to give the notice required renders the proceedings absolutely void. But the statute expressly permits the names of owners to be omitted, "when they cannot readily be ascertained." It may seem that the council, the city engineer, or the commissioners, would have no great difficulty in ascertaining the names of owners when their title is of record, and especially when they are in possession, as are the facts in the present case. But we are unable to say that it conclusively appears that it could readily be ascertained that plaintiff was the owner of the tract from which the strip was proposed to be taken in this case. We are not advised what sources of information were readily available or in fact consulted. The case in this respect is much like Knoblauch v. City of Minneapolis, 56 Minn. 321, 57 N. W. 928, which involved provisions of the Minneapolis charter that, as to giving the names of property owners on the plat and in the notices, are identical with the provisions of the statute under which the present proceedings were instituted. The plaintiff in the Knoblauch case owned land proposed to be taken. It did not appear that this fact could not be "as readily ascertained" as could the ownership of plaintiff in the case at bar. The plat showed the land as owned by another person, who was in fact a deceased ancestor through whom plaintiff derived title by descent. The court held the notice good, the reasoning being that the plat filed clearly showed that plaintiff's property was to be taken, and that she could not look at it without seeing that. That is equally true in the present case. The Knoblauch case can hardly be distinguished from this one. Mr. Justice Bunn doubts whether the reasoning of the Knoblauch case is sound, that is, whether it follows that the notice given was a compliance with the charter provisions simply because the owner could discover from the plat, if he looked at it, that his property was affected. But a majority of the court think that the case was rightly de-

cided and that it controls this. Town of Lyle v. Chicago, M. & St. P. Ry. Co. 55 Minn. 223, 56 N. W. 820, relied on by plaintiff, was distinguished in the Knoblauch case, and is clearly distinguishable. The cases of State v. District Court, 52 Minn. 283, 53 N. W. 1157; Keyes v. City of Minneapolis, 42 Minn. 467, 44 N. W. 529; City of St. Paul v. Nickl, 42 Minn. 262, 44 N. W. 59, do not involve questions of compliance with statutory provisions as to notice.

2. The next question is whether the provisions of the statute as to notice to the owners of property proposed to be taken or interfered with constitute due process of law. We do not propose here to dwell at any length upon what constitutes due process of law in proceedings *in rem* like the proceedings in question. Plaintiff was entitled to an opportunity to be heard, and to such notice as would give it this opportunity. Clearly personal service was not essential, nor was service by mail. Had plaintiff been named on the plat and in any of the published notices as the owner of the property proposed to be taken, there can be no doubt that there would be due process of law. And it is not necessarily fatal that its name did not appear. The test is whether the publication was of such a character as to create a reasonable presumption that, if the owner is present and taking care of his property, he will receive the information of what is proposed and when and where he may be heard. Bellingham Bay & B. C. R. Co. v. New Whatcom, 172 U. S. 314, 19 Sup. Ct. 205, 43 L. ed. 460. The published notice held to constitute due process of law in Everington v. Board of Park Comm. of City of Minneapolis. 119 Minn. 334, 138 N. W. 426, contained neither the names of the property owners nor a description of the property to be taken. In the case at bar the property proposed to be taken was accurately described in the published notices and on the plat filed. In addition to this plaintiff was named on the plat and in the notices as the owner of property adjacent to the strip in dispute, and proposed to be taken in the proceedings. We think it must be held that the published notices were of such a character as to create a reasonable presumption that plaintiff would receive the information of what was proposed and when and where it could be heard. We find no authorities under which a contrary holding could be justified. Plaintiff cites Chicago, B. & Q. R. Co. v. Chicago, 166 U. S. 226, 17 Sup. Ct. 581, 41 L. ed. 979, where it is said that "in determining what is due process of

law regard must be had to substance, not to form," and that "due process of law as applied to judicial proceedings instituted for the taking of private property for public use means, therefore, such process as recognizes the right of the owner to be compensated if his property be wrested from him and transferred to the public. The mere form of the proceeding instituted against the owner, even if he be admitted to defend, cannot convert the process used into due process of law if the necessary result be to deprive him of his property without compensation." In that case an award of one dollar was made for the crossings of the Burlington tracks at grade by a street opened across them. It was held, as indicated by the above quotations from the opinion, that due process of law required that compensation be made to the owner of private property taken for public use. But the court said that even if it were of the opinion that the jury erred in finding that no property right of substantial value in money had been taken from the railroad company, it could not, on that ground, re-examine the final judgment of the state court. It then proceeded to inquire whether the trial court prescribed any rule of law for the guidance of the jury that was in absolute disregard of the company's right to just compensation, and held that it did not. We do not see that this case helps plaintiff. There can be no dispute as to the law it announces, but we cannot say that the conclusion of the commissioners and the council in the present case that the damages were balanced by the benefits to the land not taken, necessarily deprives plaintiff of just compensation, and therefore is not due process of law. This case is of course a collateral attack on the proceedings, and for plaintiff to prevail it must be shown that the proceedings were absolutely void. While it does seem unjust that plaintiff should receive no compensation for the land taken other than the benefits to the rest of the property, it must be remembered that plaintiff had the right to be heard on this question, before the commissioners, again before the council, and then on appeal to the courts. What is said here is applicable also to the contention that the proceedings are void as a taking of private property for public use without just compensation first paid or secured.

We note the argument that plaintiff, being notified that a part of its right of way was to be taken, was justified in assuming that this was all, that no other property belonging to it was proposed to be taken. But the

only notice plaintiff had in either case was the published notice referring to the plat and survey on file. It was necessary to refer to this plat to see what was proposed, and a reference to it could not fail to disclose the 20-foot strip plainly marked as to be taken.

3. Plaintiff makes the claim that its interest in the strip was not taken, that all that passed by the proceedings was the one-fifth interest of Feye. Of course the intention was clearly otherwise, and we do not think, simply because there was no award to defendant, but only an award to Feye, that it should be said that the record made was insufficient. Fairly construed it showed a taking of the 20-foot strip, not merely an undivided interest in it. If the compensation, supposing it to have been more than nominal, had been awarded to the wrong person, the rightful owner had his remedy. This does not strike us as showing that plaintiff's interest was not taken.

Our conclusion is that plaintiff failed to show that the proceedings were void or did not give the city title to the strip attempted to be condemned.

Order affirmed.