IN RE IMPROVEMENT OF LAKE OF THE ISLES PARK, ETC. FRANK C. MURRAY, JULIUS J. OSTLUND AND OTHERS, APPELLANTS.[1]

April 21, 1922.

No. 22,717.

**Municipal park — what reviewable on appeal from final order of district court.**

1. The intermediate order of the district court determining that the proceedings for the improvement of a park were regular and that jurisdictional requirements had been observed may be reviewed in this court on appeal from the court's final order entered pursuant to section 3, chapter 185, Laws 1911, as amended.

**Construction of exemption clause in deed to city.**

2. Construing a clause in a deed to the city of Minneapolis conveying land for a parkway and forever exempting the remaining lands of the grantor from assessments for benefits from the improvement of the parkway, it is *held* that the exemption extended only to assessments which might be levied under the special acts of the legislature mentioned in the deed.

[1]Reported in 188 N. W. 54.

**Local improvements, as used in state Constitution, includes obtaining and embellishing public park.**

    3. The term "local improvements" in section 1, article 9, of the state Constitution comprehends the acquisition of land for a public park, fitting it for open air recreation, and setting out trees and shrubbery.

**Question of benefits for decision of park board.**

    4. Whether certain additions to a public park are of special benefit to property in the neighborhood is a matter of opinion on the facts as they appear, and the judgment of the body charged with the duty of ascertaining and assessing benefits will not be disturbed by the courts unless reasonable men could not have arrived at the same conclusion honestly.

**Several improvements may be combined in one proceeding.**

    5. The improvements described in the opinion were properly combined in one proceeding and were in compliance with chapter 185, which does not require the concurrent resolution of the park board and city council to authorize the improvement of an existing park or parkway.

**Plan of park improvement constitutes due process of law.**

    6. Where such an improvement is to be made, the statute does not require a plat and survey. A plan showing with reasonable certainty the nature and location of the proposed improvement and an estimate of its cost is sufficient, and the published notice prescribed by chapter 185, referring to such plan and estimate, constitutes due process of law.

**Estimate of cost sufficient.**

    7. The estimate was sufficiently detailed, and the probable cost of engineering, engineering equipment and contingent expenses was properly included.

    Andreas Ueland and Fred W. Reed filed objections to the assessments levied upon their real estate in the report of the commissioners to the board of park commissioners of the city of Minneapolis in the matter of the improvement of the Lake of the Isles park. From the order confirming the assessments, they appealed to the district court for Hennepin county, where the appeal was heard by Montgomery, J., who affirmed the order and appointed commissioners

to reassess the benefits.   From the final order, Jelley, J., confirming the report of the reassessment commissioners, Frank C. Murray, Alfred A. Beltz and others appealed.   Affirmed.

*Fred W. Reed,* for appellants.

*James D. Shearer,* for respondent.

LEES, C.

Appeals from an order of the district court of Hennepin county confirming the report of commissioners appointed to reassess appellant's property in proceedings for the improvement of certain parks and parkways in the city of Minneapolis.

The proceeding was instituted in October, 1919, by the adoption by the park board of a resolution pursuant to the provisions of chapter 185, p. 229, Laws 1911, as amended, commonly known as the Elwell Law.   An estimate of the cost of the improvements and blue print drawings showing their location and general nature were prepared, presented to the board, and approved and adopted.   The estimated cost of the project was $937,443.87.   The board resolved to assess two-thirds thereof upon lands specially benefited thereby and appointed commissioners to ascertain the benefits and make the assessment.   The remaining one-third of the cost was to be paid by general taxation.   The commissioners determined and reported that the total benefits exceeded $627,500 and spread an assessment for that amount upon the lots they deemed benefited.   The appellants, who are owners of some of the lots, filed objections to the assessment, but it was confirmed.   On appeal to the district court, the proceedings were confirmed, save as to the amount of the assessments. Commissioners appointed to reassess the benefits to appellants' property reported that in no case did the original assessment exceed the special benefits, and accordingly they reassessed the same amounts and their action was confirmed. These appeals were taken from the order of confirmation.

1.   Respondent contends that the regularity and validity of a special assessment made pursuant to the Elwell Law can be reviewed here only upon a writ of certiorari.   Under the law no appeal or writ of error lies to review the order of the district court

confirming proceedings attacked for irregularity or want of juris-
diction. The district court must determine the validity of the pro-
ceedings in the first instance. The amount of damages awarded
or benefits assessed, if objected to, must then be reappraised by
commissioners appointed by the court, whose award or assessment
is final, unless set aside by the court. An appeal may be taken
from the court's final order to the supreme court. We are of the
opinion that on such an appeal the legislature has not limited this
court to a review of the award of damages and assessment of bene-
fits. The question was not raised or considered in State v. District
Court F. J. D. 133 Minn. 221, 158 N. W. 240, 136 Minn. 475, 162 N.
W. 1087, where certiorari was resorted to in a condemnation pro-
ceedings under the Elwell Law.

2. In June, 1886, the city purchased from one Margaret Horan
a tract of land north of the Lake of The Isles, which is now em-
braced in the parkway to be improved. A number of the appellants
are the owners of lots which were platted upon the portion of Mrs.
Horan's land which was not conveyed to the city. The consideration
stated in the deed was one dollar. The deed contained the follow-
ing clause:

"This conveyance made at the instance of the Board of Park
Commissioners of the city of Minneapolis for parkway purposes, it
is expressly understood and agreed that in addition to the consid-
eration hereinbefore expressed, all other lands now owned by said
grantors shall be forever exempt from assessments for benefits for
the improvement of said parkway under the act of the Legislature
constituting said board as approved February 27th, 1883, and amend-
ed February 24th, 1885."

It is contended that by virtue of this clause appellants' property
is forever exempt from assessment for special benefits derived from
the improvement of the land conveyed for a parkway. After the
deed was executed, the following provision was introduced into the
state Constitution, section 1, art. 9: "The power of taxation shall
never be surrendered, suspended or contracted away."

It is settled that, save as restricted by constitutional provisions,
the state, through the legislature, may limit its power of taxation

by contract. It is also settled that such a contract will be strictly construed, and the courts will not indulge in a presumption that the power has been restricted, unless the language of the contract is too clear to admit of doubt. State v. Great Northern Ry. Co. 106 Minn. 303, 119 N. W. 202. The principle adopted by the constitutional provision we have quoted and recognized in the case cited had already been applied in State v. Duluth & I. R. R. Co. 77 Minn. 433, 80 N. W. 626, and has always been adhered to. Counsel for appellants asserts that it applies only to taxation for general purposes. There are recognized distinctions between general taxes and special assessments. Washburn M. O. A. v. State, 73 Minn. 343, 76 N. W. 204; City of St. Paul v. Oakland Cemetery Assn. 134 Minn. 441, 159 N. W. 962; State v. Minnesota Tax Com. 137 Minn. 37, 162 N. W. 686. Nevertheless when the claim is made that private property has been freed from special assessments for all time, the language of the contract under which the exemption is claimed should be clear and unequivocal to justify a court in recognizing the claim. When the deed in question was executed the statute to which it refers contained this provision:

"In case of the purchase of lands for any such parks or parkways or of any part thereof, it shall be competent for said board of park commissioners to agree with the vendor or vendors of the land so purchased upon a price therefor, which may in addition to the purchase price of such land, include exemption from an assessment for benefits upon any remaining contiguous or adjacent lands owned by such vendor or vendors, and in that case such remaining lands shall be free from any liability to assessment and contribution for benefits to be assessed upon lands as in this act provided." [Sp. Laws 1883, p. 410, c. 281.]

The statute has been upheld in State v. District Court of Hennepin County, 33 Minn. 235, 22 N. W. 625. As amended, it was applied in State v. District Court of F. J. D. 83 Minn. 170, 86 N. W. 15. So the only question we have here relates to the proper construction of the deed. We are led to the conclusion that the exemption

granted was limited to an assessment which might properly be made by virtue of the act mentioned in the deed. Nothing more was authorized by the act than an assessment of the amount required for the purchase or condmenation of the land selected for a park or parkway. The assessment might be levied as soon as the park board ascertained that amount with reasonable certainty. No assessment for the improvement of the land was authorized. Nevertheless the deed purports to exempt all the grantor's land from such assessments. Presumably the parties were mindful of the statute when they made their agreement. Its language fairly indicates that when land was purchased the procedure should be as follows: The park board should first agree with the landowner upon the purchase price, and then, if part of the price was to be paid in an exemption of the owner's remaining contiguous land from assessment, the amount so to be paid should be agreed upon. The board was not empowered to grant an unlimited exemption or one indefinite in amount. It was restricted to granting one representing the difference between the entire purchase price and the portion paid in cash. After the Minneapolis Park acts were consolidated in chapter 30, p. 560, Sp. Laws 1889, there could be no doubt that this was the intention of the legislature. Whatever doubts there may have been theretofore were due solely to ambiguities of expression in the earlier acts.

The statute and the deed must be read together. The word "improvement" as used in the latter was inept. Followed, as it is, by the words "under the act * * * approved February 27th, 1883," it is deprived of its ordinary significance and must be taken to mean assessments for benefits which might be levied under that act, that is, only such as resulted from the acquisition of land for parks and parkways. This is not such an assessment. It is one for benefits which could not have been assessed at all by virtue of the act referred to in the deed, and hence it is not covered by the exemption clause above set out. Exemptions from assessments is the subject of a note to Giles v. Olympia, 16 A. L. R. 499, which we have found helpful.

We pass without comment respondent's assertion that, if the deed is given the effect claimed for it by the appellants, the contract the city attempted to make with Mrs. Horan was ultra vires, and appellants' counter assertion that, since the city acquired title solely by virtue of the deed, it is estopped from questioning the authority of the park board to enter into the contract. The construction of the statute and the deed which we have adopted renders it unnecessary to consider these questions.

3. The state Constitution, § 1, art. 9, empowers the legislature to authorize municipal corporations to levy and collect assessments for local improvements upon property benefited thereby without regard to a cash valuation. Appellants assert that the contemplated improvements are not local, and hence their cost cannot be assessed. The term "local improvements" refers to "anything for which a tax by special assessment might, under the general rules of law, be imposed, that is, any public purpose from which the property assessed derives a benefit special and local in its nature." State v. Reis, 38 Minn. 371, 38 N. W. 97.

They are "improvements made in a particular locality by which the real property adjoining or near such locality is specially benefited." Rogers v. City of St. Paul, 22 Minn. 494.

It is now too firmly settled to admit of dispute that acquiring land for a public park, fitting it for open air recreation, and adding to its appearance by planting trees, shrubbery and flowers, are all local improvements of special benefit to private property in the neighborhood. State v. District Court of Hennepin County, supra; State v. Brill, 58 Minn. 152, 59 N. W. 989; State v. District Court of Ramsey County, 75 Minn. 292, 77 N. W. 968; Shoemaker v. U. S. 147 U. S. 282, 13 Sup. Ct. 361, 37 L. ed. 170; Wilson v. Lambert, 168 U. S. 611, 18 Sup. Ct. 217, 42 L. ed. 599; Holt v. Somerville, 127 Mass. 408; Kansas City v. Bacon, 147 Mo. 259, 48 S. W. 860; Matthews v. Kimball, 70 Ark. 451, 66 S. W. 651, 69 S. W. 547.

In this connection, the further contention is made that by no stretch of the imagination can it be said that some of the proposed improvements are of any benefit to appellants' property. Ornamental settees and lamps, concrete walks, a baseball field and a

shelter and toilet house are among those singled out to emphasize the point. Whether private property is benefited by a public improvement is a matter of opinion upon the facts as they appear. The question must be left to the judgment of men. Its decision rested with the commissioners appointed to make the assessment. Under some statutes it has been held that their judgment is final and not reversible by a court unless it appear that it was fraudulent, arbitrary or made upon a demonstrable mistake of fact. State v. Board of Public Works, 27 Minn. 442, 8 N. W. 161; State v. District Court of Ramsey County, 33 Minn. 164, 22 N. W. 295; Mayer v. City of Shakopee, 114 Minn. 80, 130 N. W. 77; Hughes v. Farnsworth, 137 Minn. 295, 163 N. W. 525; Sullwold v. City of St. Paul, 138 Minn. 271, 164 N. W. 983, Ann. Cas. 1918E, 835; In re Concord Street, 148 Minn. 329, 181 N. W. 859. Under others, it has been held that in reviewing the assessment the court should regard the decision of the commissioners as it would the verdict of a jury. State v. District Court of Hennepin County, supra; State v. Ensign, 55 Minn. 278, 56 N. W. 1006; Everington v. Board of Park Commrs. 119 Minn. 334, 138 N. W. 426.

We incline to the opinion that the first mentioned rule is applicable under the Elwell Law. But, even if the other rule applies, the order of the district court would have to be sustained. It cannot be said that the additions to the park to which appellants specially object are so clearly of no benefit to their property that reasonable men could not honestly entertain a contrary opinion, and this is the test by which to determine whether or not a verdict should stand. Moreover section 6 of the Elwell Law, as amended, expressly authorizes assessments for necessary structures and apparatus for playgrounds and general park uses, and section 3 declares that the commissioners' assessment shall be final, unless set aside for good cause shown, while the statute considered in the three cases last cited declared that the district court should have power to revise, correct, amend or confirm the assessment in whole or in part and make or order a new assessment.

The foregoing is all that need be said with reference to appellants' additional point that the assessment has not been spread equally or uniformly over the property in the assessment district.

4.   Citing Mayall v. City of St. Paul, 30 Minn. 294, 15 N. W. 170, and cases from other jurisdictions, it is urged that three distinct improvements are included in one proceeding and that this invalidates the assessment.   In Mayall v. City of St. Paul, the improvement of the eastern and western sections of Mt. Airy street was involved.   The two sections were separated by rough untraversable territory unused and unimproved as a street or highway.   It was held that the improvement of one section could not be combined with the improvement of the other in one proceeding because the two were separate and distinct.   The facts here are quite different.   Lake of The Isles and Lake Calhoun are connected by a lagoon.   The parkway around the two lakes is or will be continuous and is adjoined by William Berry Park.   There is a natural relation between all portions of these parks and parkways.   State v. District Court of Ramsey County, 33 Minn. 295, 23 N. W. 222.   Again, in defining the boundaries of an assessment district, the exercise of legislative discretion is involved, with which the courts should not interfere, unless the action taken is so arbitrary and oppressive as to amount to an abuse of discretion.   In re Delinquent Taxes, 147 Minn. 344, 180 N. W. 240.   The facts presented here do not require a reversal on the ground stated in this subdivision of the opinion.

5.   The amendments of 1913 and 1917 have enlarged the original scope of the Elwell Law so that now an existing park or parkway may be improved and the expense assessed against property specially benefited.   Before it was amended, it was designed to authorize assessments levied in connection with the exercise of the power of eminent domain.   As the law now stands it is something of a patchwork.   It is not the only instance in which the legislature has added to a statute framed for one purpose provisions designed to adapt it for use for a different purpose.   The State Rural Highway Act of 1911 was, if anything, a less workable statute, but this court treated it as a piece of legislation that might be put into practical operation in spite of all administrative difficulties.   Alexander v. McInnis, 129 Minn. 165, 151 N. W. 899.   It is the duty of a court to so construe a statute as to give effect, if possible, to every portion of it and to avoid a construction which would render it unconstitutional.

3 Dunnell, Minn. Dig. §§ 8931, 8950. Applying the rule, we hold that the statute authorizes the present proceeding.

6. In the exercise of such authority, the park board was not required to adopt a resolution designating the lands to be acquired because the project was to improve lands already owned by the city. Neither was the city council required to concur in the board's resolution. The words "concurrent resolution" are in sections 1 and 6 of the statute as originally enacted, which makes no provision for the improvement of existing streets or parkways. The amendments authorize the park board to proceed without the concurrence of the city council whenever land is to be *taken* or *improved*, or *taken and improved* for parks and parkways only.

7. The sufficiency of the commissioners' notice to property owners is questioned. Section 2 of the statute provides that the commissioners shall give notice by two publications in the official paper of the city, that a plat and survey of the proposed improvement, showing the property to be taken and the names of the owners, is on file in the office of the secretary of the park board for the examination of all persons interested. A plan of the proposed improvement and estimates of its cost were filed, but not a plat or survey. The published notice referred to such plan and estimates. The objection that this is not a compliance with the statute is not valid, for the reason that the law requires a survey and plat to be made and filed only when it is proposed to take land for a park. Such is not the purpose of these proceedings. The land had already been acquired. No survey was necessary to ascertain where it lay or to define its boundaries. It would be a useless ceremony to run the lines anew. It was necessary, however, to show the character of the proposed improvement and the estimated cost of the several items thereof. This appeared with sufficient certainty from the blue prints and estimates which were filed. It is immaterial whether the blue prints were referred to as "plats" or "plans." Their sufficiency is not determined by what they were called, but by what they showed. The notice referring to them constituted due process of law. Everington v. Board of Park Commrs. supra; Great Northern Ry. Co. v. City of Minneapolis, 136 Minn. 1, 161 N. W. 231.

8. We regard the engineer's estimate of the cost of the several items of the improvement as a sufficient compliance with section 6 of the statute. Greater particularity would be of no benefit to property owners whose land was to be assessed. The items covering engineering and engineering equipment were properly included as a part of the actual cost of the work, although the engineers were regularly salaried officers and employes of the city and the city owned the equipment. City of St. Paul v. Mullen, 27 Minn. 78, 6 N. W. 424; Burns v. City of Duluth, 96 Minn. 104, 104 N. W. 714; Page & Jones, Tax. by Assessment, § 468. The item "contingencies" was explained in the testimony of the engineers as fences, barricades, provision for the temporary diversion of travel and the like, and is a usual and necessary expense bound to be incurred in making an extensive improvement. We think it was properly included in the estimate of the cost of the project.

All the points made by appellants have been considered, but we have commented only on those deemed important. We find no error in the record, and the order appealed from is accordingly affirmed.

HOLT, J., took no part.